**In re Patricia LANCASTER, Esq.**

[690 A.2d 863]

No. 95-547

January 23, 1997. The Professional Conduct Board recommends that respon-

dent, who knowingly made false statements to a court in a pretrial motion, receive a public reprimand for her conduct. Respondent argues that, based on the circumstances of this case, a private admonition would adequately serve the goals of the disciplinary process. We adopt the Board's recommendation that respondent receive a public reprimand.

Respondent has stipulated to the underlying facts. At the time this incident occurred, respondent had practiced law for fifteen years. She was admitted to the Vermont bar in 1987, and since that year has served as a public defender. On May 20, 1993 she was appointed to represent John Gillam on a charge of driving under the influence, third offense. When she first interviewed the defendant on that date, he stated that he had provided a breath sample to the police and that at his request he had been taken to a hospital to obtain an independent blood test. Respondent received the results of that test several weeks later. In November 1993 respondent deposed the processing officer. The officer testified that the defendant had not requested a blood test and therefore had not been taken to the hospital. The processing paperwork did not mention the trip to the hospital, and the prosecutor was unaware that defendant had received the blood test.

Based on the officer's testimony, respondent moved to suppress the results of the defendant's breath test, alleging that the defendant's request for an independent blood test was denied. See 23 V.S.A. § 1202(d)(4); *State v. Karmen*, 150 Vt. 547, 548-49, 554 A.2d 670, 671 (1988). She admits that she knew at the time she filed the motion that the defendant had in fact been given a blood test. Respondent gave substantial consideration to the motion and discussed the issue with another attorney. Her decision to file the motion was based on her belief that a motion in a criminal case raises issues for hearing and places the burden on the State to establish compliance with statutory and constitutional requirements.

At the hearing, the officer again testified that the defendant had not been taken to the hospital for an independent blood test because he did not ask for one. Respondent put the defendant on the stand. She had previously advised him to answer all questions truthfully, whether on direct or cross-examination. In response to her questions, the defendant testified that he had requested a blood test, and that up to a certain time, the police did not take him to get a test. Respondent limited her direct examination to avoid the conclusion of the processing, and the defendant's eventual trip to the hospital for the blood test. This information was, however, elicited during cross-examination, and respondent withdrew the motion to suppress at the conclusion of the hearing.

Respondent stipulated that her conduct violated DR 7-102(A)(5) (knowingly making a false statement of law or fact). The Board also found that respondent engaged in deceit and misrepresentation in violation of DR 1-102(A)(4) and in conduct prejudicial to the administration of justice in violation of DR 1-102(A)(5). Based on these violations, the Board looked to Standard 6.12 of the American Bar Association Standards for Imposing Lawyer Sanctions. See *In re Berk*, 157 Vt. 524, 532, 602 A.2d 946, 950 (1991) (ABA standards helpful in determining attorney sanctions). That provision states:

> Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

The Board recognized, however, that the circumstances of this case supported a less severe form of discipline. Specifically, the Board noted that respondent was motivated by a desire to advocate strongly for her client, not by selfishness; that she was troubled by the ethical dilemma and sought guidance from a colleague; that she tried to avoid the presentation of perjured testimony by counselling her client to testify truthfully; that she had no prior disciplinary history; that she cooperated with the disciplinary proceedings; and that she was extremely remorseful. In light of the strong and positive impact the disciplinary process had on respondent, the Board concluded that a public reprimand would be a sufficient sanction.

We agree with the Board that this instance of misconduct does not warrant the sanction suggested by Standard 6.12. This case, although involving a serious violation of the disciplinary rules, is distinguished by the many mitigating factors listed above. See ABA Standard 3.0 (in imposing sanction, court should consider existence of aggravating and mitigating factors). Respondent did act wrongly, but both the Board and bar counsel agree that she was motivated by a sincere desire to advocate strongly for her client and by a good-faith misunderstanding of the law. In the words of the Board, respondent acted with a "bad head," not with a "bad heart."

Nonetheless, we cannot accept respondent's argument that a private admonition is the appropriate sanction. According to the Permanent Rules Governing Establishment of the Professional Conduct Board and Its Operation, an admonition should be imposed "[o]nly in cases of minor misconduct, when there is little or no injury to a client, the public, the legal system, or the profession." A.O. 9, Rule 7(A)(5)(b). However well-intentioned, respondent's conduct was a serious violation of the Code of Professional Responsibility. The profession, the public, and most of all the judicial system, rely on attorneys to be honest and straightforward in their representations to courts.

*Respondent is publicly reprimanded for the violations found in this opinion.*